HERP v. MURPHY.

LANDLORD AND TENANT—CONSTRUCTION OF LEASE—FEED FOR STOCK.
   A lease providing that "party of the first part is to furnish feed for stock until feed can be grown on premises except for horses. All grain and bran purchased shall be paid for one-half each after feed is grown on the premises," construed and held, that, after the crops for the summer began to come in, the horses as well as the other stock

should be fed from the products of the farm, and that all grain and bran purchased thereafter should be paid for one-half each.

Appeal from Allegan; Cross, J. Submitted April 10, 1919. (Docket No. 30.) Decided May 29, 1919.

Bill by Michael Herp against George Murphy and another to restrain an action at law and for an accounting. From a decree for plaintiff, defendant Murphy appeals. Modified, and affirmed.

*Herman & Johnson,* for plaintiff.

*Clare E. Hoffman,* for appellant.

MOORE, J. April 12, 1916, the plaintiff leased in writing from defendant a farm for a series of years. At about the same time Mr. Herp bought from Mr. Murphy a quantity of personal property including four horses. He gave his notes for a portion of the purchase price. Mr. Herp worked the farm, selling the cream and other farm products until December, 1917. There were alleged settlements between the parties from time to time. The lease was terminated by the consent of both parties. During its existence a good deal of friction had arisen between the parties. At the close of the lease there was an auction sale and an attempt was made to settle with the clerk of the auction the respective interests of the parties. When Mr. Herp left the farm he left upon it a quantity of hay, clover seed, potatoes and perhaps other farm products which he claims were to be sold and the proceeds divided, or were to be divided between the parties. Soon after the auction sale Mr. Murphy commenced a suit against Mr. Herp before Frank Gregg, a justice of the peace. The plaintiff then commenced this chancery case to restrain the prosecution of the suit in justice's court, he claiming that defendant had

refused to give him his share of the farm crops as agreed and asking for an accounting of their partnership affairs, averring that there was a considerable amount of money due him. The subsequent conduct of Mr. Gregg is not important. Mr. Murphy answered in detail the averments of the bill of complaint. The case was put at issue and heard in open court. The trial judge filed a written opinion and after a little delay a decree was entered, the material parts of which read:

"This cause having been duly brought on to be heard upon the bill of complaint, answer and crossbill of defendant, George Murphy, and after issues joined and proofs taken in open court, and this court being advised that plaintiff has heretofore returned to defendant Murphy the stock tank and has received from defendant Murphy one hundred twelve and one-half (112½) pounds of clover seed, and the court being fully advised in the premises, it satisfactorily appears to this court that plaintiff is entitled to recover from defendant Murphy for the following items:

| | |
|---|---:|
| For hay tackle sold defendant | $18.00 |
| For corn furnished for feed | 33.86 |
| For potatoes used for seed | 9.00 |
| For oats used for feed | 297.50 |
| Being a total amount of | $358.36 |

"And it also appears to this court that defendant Murphy is entitled to recover from the plaintiff for the following items:

| | |
|---|---:|
| To replace stove wood | $28.00 |
| For 14 bu. of wheat | 14.60 |
| For pork consumed by plaintiff | 78.00 |
| For carpet sold plaintiff | 40.00 |
| For half price of two calves | 29.75 |
| For hay furnished plaintiff | 86.00 |
| For milk from November 15th | 15.00 |
| For credit on hay tackle | 4.00 |
| For half expense of threshing clover seed | 10.83 |
| A total amount of | $306.18 |

"It is therefore ordered, adjudged and decreed, and the court doth hereby order, adjudge and decree that the defendant George Murphy forthwith shall pay to the clerk of said court for plaintiff, the sum of fifty-two dollars and eighteen cents."

The case is brought here by appeal.

We quote from appellant's brief:

"From the decree rendered the plaintiff did not appeal. Defendant appealed and claims that the court was in error:

"*a.* In failing to allow to the defendant the damages sustained by reason of the unlawful detention of the hay.

"*b.* In allowing to the plaintiff the item of $297.50 for oats used for feed.

"*c.* In allowing to the plaintiff the item of $33.86 for corn furnished for feed.

"*d.* In allowing the item of $9 for potatoes for seed in 1916.

"*e.* In allowing to the defendant but $40 instead of $45 for the carpet."

We take up the items in the order in which they are presented:

*a.* Between the date of the commencement of the suit and the time of the trial the price of hay had dropped and it is claimed that as plaintiff had tied up the sale of the hay by his injunction suit, he should have shared the loss. The plaintiff replies that the defendant himself is responsible for the delay as he refused to allow the hay to be baled or sold by the plaintiff. The record shows that the hay was afterwards divided in the mow and Mr. Murphy testified: "I never objected to their taking their half of the hay. I wanted to feed mine."

*b* and *c.* Defendant claims no charge should be made against him as to these two items. It is agreed the item $33.86 should be for corn and feed instead of as it reads. Whether these items should be a charge in whole or in part against the defendant depends

upon the construction to be given that part of the lease reading as follows:

"Party of the first part is to furnish feed for stock until feed can be grown on premises except for the horses. All grain and bran purchased shall be paid for one-half each after feed is grown on the premises. All stock is to be fed from the general products before division. * * *

"And the said party of the second part does hereby hire the said premises for the term of three years, as above mentioned, and does covenant and promise to pay to the said party of the first part his representatives and assigns, for rent of said premises for said term, the sum of one-half of all crops and all increase that may be produced from livestock and party of second part is to furnish all teams and tools to carry on said farm and is to perform all the labor. The binder twine and expense of threshing, baling hay, each to pay one-half. Second party is to market all the produce that is to be sold by them and deliver one-half of the money to first party."

It is the claim of plaintiff that the parties to the lease expected that oats and other grain could be grown upon the farm sufficient to feed the horses and other stock, but that because of the wet season oats could not be grown and that the land which should have been used to grow oats was used to grow other crops and that as it was necessary to buy oats to feed the horses the defendant should pay for them. This view seems to have been accepted by the judge. In the testimony of the defendant the following appears:

"I never told Herp that he had to furnish corn and oats under his contract. He had to furnish the feed for his horses until it was grown on the farm.

"Q. But if there wasn't anything grown for two or three years, you wouldn't expect him to furnish feed, would you?

"A. I should expect him to grow it. I never saw the time but that I raised a good crop on that farm, or anybody else. * * *

"I understand I was to furnish all the coarse feed to feed the stock until it should be grown on the premises. While the lease doesn't say so, that is the meaning of it, coarse feed. I supposed the word 'coarse' was in the lease.

"*Q.* You told him you wanted the lease drawn like somebody's else lease?

"*A.* Yes.

"*Q.* So you engineered what should go in the lease, didn't you?

"*A.* I did, yes, sir. I was to pay half for the grain and bran purchased after things were grown on the place."

It is impossible to read the somewhat ambiguous provisions of the lease in the light of the circumstances and the facts disclosed by the record without reaching the conclusion that after the crops for the summer began to come in it was expected the horses as well as the other stock should be fed from the products of the farm, and that "all grain and bran purchased shall be paid for one-half each after feed is grown on the premises." We think the trial judge was in error in not dividing equally the charge for the oats.

*d.* This item is justified by the record.

*e.* We think counsel must have overlooked the correction plaintiff made in his testimony and the testimony of defendant. "They kept kicking about paying a dollar for oats so I gave them five dollars credit on the carpet."

The chancellor had a complicated case in which many witnesses were sworn who gave contradictory testimony. A number of exhibits containing many items required his examination. The only error we discover is the one we have indicated.

The decree will be modified as indicated. The defendant will recover costs.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.